COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



JARRETT RONARD LOCKRIDGE,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-08-00139-CR



Appeal from the


195th District Court


of Dallas County, Texas


(TC# F-0755586-N)


O P I N I O N


 Appellant pled guilty to aggravated assault on a public servant with a deadly weapon. The
trial court found Appellant guilty and sentenced him to 18 years' confinement and assessed a $3,000
fine. The trial court overruled Appellant's motion for new trial. Appellant now appeals his
conviction alleging that his guilty plea was unknowingly and involuntarily made and that he suffered
ineffective assistance of counsel during the punishment phase of his plea proceedings. We affirm.

BACKGROUND


 At the plea proceedings, Dallas Police Officer Carter testified that on August 4, 2007, he
responded to a disturbance where Appellant, his brother, and another man were involved in a street
fight in front of Appellant's house. Officer Carter observed that Appellant had a brick and instructed
him to drop it. Despite Officer Carter's efforts to verbally calm them, Appellant and his brother
remained agitated. Officer Carter then moved the brothers to the other side of his patrol car for the
purposes of investigating and resolving the situation. While Officer Carter was speaking to the
brothers, Appellant's mother entered the street and began cussing at Officer Carter, which, in turn,
began to agitate the brothers once more. Officer Carter directed Appellant's mother to step back
onto the sidewalk and asked her to refrain from cussing at him. Officer Carter once more turned his
attention to Appellant and his brother. Their mother again entered the street cussing and "going into
a road rage." Officer Carter, whose "cover" had not yet arrived, sensed that there was going to be
a major disturbance. He decided to arrest Appellant's mother, and as he attempted to do so,
Appellant struck Officer Carter in the head with the corner of a brick. Officer Carter suffered
injuries to his head and eye. Appellant was charged by indictment with aggravated assault of a
public servant with a deadly weapon.

 During the plea proceedings, the trial court and Appellant engaged in the following discourse:

 THE COURT: Cause Number F-07-55586 styled the State of Texas versus Jarrett
Lockridge. Is that your name, sir?


 THE DEFENDANT: Yes, sir.


 THE COURT: You stand charged by indictment with the first-degree felony offense
of aggravated assault on a public servant. Do you understand exactly what you're
charged with?


 THE DEFENDANT: Yes, sir.


 THE COURT: Have you gone over the indictment and have you discussed the
allegations with your lawyer?


 THE DEFENDANT: Yes, sir.


 THE COURT: Do you understand the range of punishment for this first-degree
felony offense?


 THE DEFENDANT: Yes, sir.


 THE COURT: Are you a citizen of the United States of America?


 THE DEFENDANT: Yes, sir.


 THE COURT: You have the right to a trial by jury. Do you wish to waive or give
up that right or do you wish to have a jury trial?


 THE DEFENDANT: Waive.


 THE COURT: Is your client mentally competent?


 [DEFENSE COUNSEL]: Your Honor, he is mentally competent, and I would ask
the Court to take judicial notice of the letter that is in the file of his evaluation.


 THE COURT: The Court will so notice. Is the defendant going to testify?


 [DEFENSE COUNSEL]: He is, Your Honor. [Defendant takes oath]. . . . Comes
now defendant, admits that his true name is Jarrett Lockridge, waives reading of the
indictment, right to jury trial, giving that right up freely and voluntarily and entering
his plea of guilty.


 THE COURT: Are you pleading guilty freely and voluntarily?


 THE DEFENDANT: Yes, sir.


 The judicially-noticed letter was prepared by Dr. Lisa Clayton, the psychiatrist who was
ordered by the trial court to evaluate Appellant for the purposes of determining his competency to
stand trial and whether he suffered from any mental illness. In the evaluation, Dr. Clayton set forth
her professional conclusions that Appellant: (1) understood the charges and possible penalties in
the case; (2) understood the adversarial nature of the proceedings; (3) was able to disclose
information regarding both the underlying facts and events as well as his state of mind at the time
of the alleged offense; (4) had the ability to engage in reasonable choices of legal strategies and
options concerning his case; (5) had the ability to testify relevantly and exhibit appropriate courtroom
behavior; and (6) had a rational as well as factual understanding of the charge, the legal processes,
and the roles of courtroom personnel. Dr. Clayton also stated that it was her professional opinion
that Appellant would be mentally competent as long as he remained on his medication for
schizophreniform disorder.

 Upon the conclusion of Officer Carter's testimony, Appellant testified that defense counsel
had discussed with him: (1) his right to a jury trial; (2) his right to enter an open plea of guilty; and
(3) the State's offer of a 15-year sentence. In response to defense counsel's questioning, Appellant
showed that he had a tenth-grade education and worked moving furniture. Appellant acknowledged
that defense counsel had Appellant evaluated by a doctor who had diagnosed Appellant with
schizophrenia and had provided him with medication. Appellant testified that he was taking the
medication at the time of the plea. He testified that his parents had never had him evaluated by a
psychologist and that he had not been diagnosed with schizophrenia until he went to jail. Appellant
also affirmed that he had told defense counsel that he wanted to enter an open plea.

 During closing arguments, defense counsel noted that Appellant was 18 at the time of the
offense and saw his mother "getting attacked." Noting that, since the offense, Appellant had been
diagnosed with schizophrenia and was "not all there," defense counsel argued that these factors
should be considered for the purpose of mitigating Appellant's punishment. Defense counsel
informed the trial court that Appellant needed help and did not need to go to the penitentiary because
he would be worse off when he was released. He likewise argued that the trial court should consider
Appellant's lack of medical attention and medical diagnosis prior to the commission of the offense,
and then asked the trial court to "get him the help he needs."

 The trial court accepted Appellant's plea of guilty, found him mentally competent to enter
his plea of guilty, and sentenced him to 18 years' confinement.

DISCUSSION

 In two issues, Appellant complains that he did not knowingly and voluntarily plead guilty and
that he suffered ineffective assistance of counsel because his trial attorney failed to properly develop
and present mitigating evidence pertaining to his mental illness.

Voluntariness of the Plea The Constitution requires a guilty plea to be made knowingly and voluntarily. See Brady v.
United States, 397 U.S. 742, 748-49, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Elliott v. State, 874
S.W.2d 238, 239 (Tex. App.-El Paso 1994, no pet.). Article 26.13 of the Texas Code of Criminal
Procedure safeguards this mandate by ensuring that an individual who pleads guilty comprehends
both the charges against him and the consequences of his plea. Tex. Code Crim. Proc. Ann. art.
26.13 (Vernon 2009); see Meyers v. State, 623 S.W.2d 397, 402 (Tex. Crim. App. 1981); Elliott, 874
S.W.2d at 239; Basham v. State, 608 S.W.2d 677, 678 (Tex. Crim. App. 1980); Singleton v. State,
986 S.W.2d 645, 649 (Tex. App.-El Paso 1998, pet. ref'd). Under this provision, the trial court is
required to admonish a criminal defendant of certain facts and rights prior to accepting a plea of
guilty. Tex. Code Crim. Proc. Ann. art. 26.13 (Vernon 2009). A trial judge need only substantially
comply with the dictates of Article 26.13(c) and is under no requirement to follow a strict formula
or ask a specific set of questions to achieve such compliance. Estrada v. State, 981 S.W.2d 68, 70
(Tex. App.-San Antonio 1998, pet. ref'd); Singleton, 986 S.W.2d at 650. Article 26.13(d) allows
the admonitions to be made either orally or in writing and, if made in writing, both the defendant and
defense counsel must sign a statement indicating the defendant understands the admonitions and is
aware of the consequences of the plea. Tex. Code Crim. Proc. Ann. art. 26.13(d) (Vernon 2009);
Meraz v. State, 950 S.W.2d 739, 742 (Tex. App.-El Paso 1997, no pet.); Blanco v. State, 771 S.W.2d
598, 599 (Tex. App.-Corpus Christ 1989, no pet.). When the record reveals that the trial court
properly admonished the defendant regarding the consequences of his plea, the record presents a
prima facie showing the defendant entered a knowing and voluntary plea. Fielding v. State, 266
S.W.3d 627, 636 (Tex. App.-El Paso 2008, pet. ref'd). The burden then shifts to the defendant to
show the plea was not voluntary, that is, that he pleaded guilty without understanding the
consequences of his plea and that he therefore suffered harm. Id.

Analysis

 In the case at bar, the record shows that Appellant entered into a non-negotiated plea. 
Appellant and defense counsel executed two written documents, a non-negotiated plea agreement
and a judicial confession. At the plea hearing, the trial court advised Appellant of the charges
against him and Appellant informed the trial court that he had reviewed and discussed the allegations
with his attorney. The trial court informed Appellant of his right to be tried by a jury and informed
the trial court that he wished to waive that right. Appellant informed the trial court that he
understood the range of punishment for this first-degree offense. In response to defense counsel's
questions, Appellant indicated that he understood that the State had offered him a plea bargain
agreement with a 15-year sentence, and that the trial court could impose a sentence of confinement
ranging from five years to [ninety-]nine years or life. The trial court inquired about Appellant's
mental competence and took judicial notice of Dr. Clayton's assessment of Appellant, which
included her professional conclusion that Appellant was mentally competent to participate in his
legal proceedings as long as he remained on his medication. During the plea proceedings, Appellant
testified that he was "on those medications" and informed the trial court that he was freely and
voluntarily pleading guilty.

 Because the record contains a prima facie showing that Appellant was duly admonished
regarding the voluntariness of his plea, the burden shifts to Appellant to show that his plea was not
voluntarily entered. Fielding, 266 S.W.3d at 636. Some of Appellant's assertions on appeal, such
as "the overwhelming sense the reader gets from the questioning is that Appellant's attorney coached
[him]," are of a purely speculative character and have no factual basis in the record. Nor do we find
in the record any evidence that Appellant complained to the trial court that his plea was not
knowingly, freely, or voluntarily made. The record does not show that Appellant or defense counsel
ever expressed to the trial court any dissatisfaction with the plea during the proceedings . Because
Appellant stated that he was currently taking the medication necessary to render him mentally
competent, we find that his competency is not at issue in determining whether his plea was
voluntarily made. We also note that the trial court was able to assess Appellant's demeanor,
credibility, and answers during the proceedings. From a cold record, we cannot.

 Having considered the record and Appellant's contentions, we are compelled to find that
Appellant has not met his burden of showing that he did not possess the requisite awareness of the
proceedings or the likely consequences thereof. Fielding, 266 S.W.3d at 636. Consequently,
because the record demonstrates that Appellant was aware of the consequences of his plea, we must
conclude that Appellant knowingly and voluntarily entered his plea of guilt. Brady, 397 U.S. at 748-49; Elliott, 874 S.W.2d at 239. We overrule Appellant's first issue.

Ineffective Assistance of Counsel

 In his second issue, Appellant contends that defense counsel failed to properly develop and
present mitigating evidence pertaining to his mental illness, thereby depriving him of the effective
assistance of counsel. Appellant specifically complains that defense counsel should have presented
expert and other witnesses such as family, friends, and school teachers and counselors to explain why
Appellant's mental illness was the cause of his inappropriate behavior and why Appellant was
unlikely to commit future offenses since being diagnosed and treated for schizophreniform disorder. 
 When determining whether counsel's representation was inadequate so as to violate a
defendant's Sixth Amendment right to counsel, we adhere to the two-pronged test set forth in
Strickland. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The defendant must first show that
counsel's performance was deficient, i.e., that his assistance fell below an objective standard of
reasonableness. McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), cert. denied, 519
U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997), abrogated by Mosley v. State, 983 S.W.2d 249
(Tex. Crim. App. 1998); Ex parte Menchaca, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993);
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Second, assuming Appellant has
demonstrated deficient assistance, he must prove prejudice. Strickland, 466 U.S. at 687; McFarland,
928 S.W.2d at 500; Thompson, 9 S.W.3d at 813. In short, Appellant must show a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would have been
different. A reasonable probability is a probability sufficient to undermine confidence in the
outcome. Hernandez, 726 S.W.2d at 55. This two-pronged test is the benchmark for judging
whether counsel's conduct so undermined the proper functioning of the adversarial process that the
trial cannot be relied on as having produced a reliable result. McFarland v. State, 845 S.W.2d 824,
843 (Tex. Crim. App. 1992), cert. denied, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

 Appellant bears the burden of proving by a preponderance of the evidence that counsel was
ineffective. Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). Failure to make the
required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness
claim and prevents us from concluding that the conviction resulted from a breakdown in the
adversarial process that renders the result unreliable. Menchaca, 854 S.W.2d at 131. There is a
strong presumption that counsel's conduct fell within the wide range of reasonable professional
assistance. Strickland, 466 U.S. at 687-88; Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994). In determining the validity of Appellant's ineffective assistance claim, our review must be
highly deferential to trial counsel and avoid the deleterious effects of hindsight. Ingham v. State, 679
S.W.2d 503, 509 (Tex. Crim. App. 1984). We must look to the totality of the representation and the
particular circumstances of each case in evaluating the effectiveness of counsel. Ex parte Scott, 581
S.W.2d 181, 182 (Tex. Crim. App. 1979); Ex parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App.
1991).

 A claim for ineffective assistance of counsel may not be predicated upon a failure to call
witnesses unless Appellant shows that such witnesses were available and that their testimony would
have benefitted the Appellant. See King v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); Ex
parte Cruz, 739 S.W.2d 53, 59 (Tex. Crim. App. 1987), overruled on other grounds by Hernandez
v. State, 988 S.W.2d 770 (Tex. Crim. App. 1999); Ex parte McFarland, 163 S.W.3d 743, 758 (Tex.
Crim. App. 2005). Any allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness. McFarland, 928 S.W.2d at 500. 
However, the record on direct appeal is typically insufficient for an appellate court to fairly evaluate
a claim of ineffective assistance of counsel because the reasonableness of counsel's choices often
involve facts that do not appear in the appellate record. Jackson v. State, 973 S.W.2d 954, 957 (Tex.
Crim. App. 1998); Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999); Rylander v. State,
101 S.W.3d 107, 110 (Tex. Crim. App. 2003). In many cases, where an Appellant does not
challenge a claim of ineffective assistance before the trial court, it is proper for the appellate court
to overrule an Appellant's Sixth Amendment claim without prejudice to Appellant's ability to dispute
counsel's effectiveness collaterally. See Thompson, 9 S.W.3d at 814. Of course, in the rare case
where the record on direct appeal is sufficient to prove that counsel's performance was deficient, an
appellate court should obviously address the claim in the first instance. Id.

Analysis

 Appellant contends that defense counsel should have called additional witnesses in mitigation
of punishment. However, there is nothing in the record to show that they would have been called
as witnesses, that they were available to testify, or that their testimony, if any, would have proven
beneficial to Appellant.

 The record in all other respects is silent as to why Appellant's trial counsel did not call
witnesses during the punishment phase of the plea. Therefore, Appellant has failed to rebut the
presumption this was a reasonable decision. Strickland, 466 U.S. at 699-700. We must be especially
hesitant to declare counsel ineffective when the record provides no discernible explanation of the
motivation behind counsel's acts or omissions. Thompson, 9 S.W.3d at 814. For an undetermined
reason, counsel did not call punishment witnesses, and only further inquiry will provide the
information necessary to make the proper determination that defense counsel did or did not provide
the effective assistance envisioned under the Sixth Amendment. Id.

 We do not decide, therefore, that Appellant did or did not receive the effective assistance of
counsel during trial. Rather, we find that the record as it exists on direct appeal is insufficient to
support Appellant's second issue. We overrule Appellant's second issue.

CONCLUSION

 Having overruled Appellant's issues, we affirm the trial court's judgment.


 GUADALUPE RIVERA, Justice


March 17, 2010


Before Chew, C.J., McClure, and Rivera, JJ.


(Do Not Publish)